# Ramsey's Appeal.

Upon the sale of real estate by an administrator, in pursuance of an order of the orphan's court, for the payment of debts, the interest upon those debts ceases at the return day of the order of sale.

A transcript of the balance found to be in the hands of an executor or administrator, upon the settlement of his account, filed in the common pleas, is not a judgment, and payable as such out of a decedent's estate : it is payable only as a lien on lands, or as a simple contract debt.

A recognizance entered into in the orphan's court, to secure the purchase money of land, is a special lien upon that land; and when it is sold as the estate of a decedent, for the payment of debts, that recognizance has priority in the distribution of the proceeds.

An action of debt against two; an award of arbitrators against both, and an appeal by one : upon the death of him who did not appeal, the award has the effect of a judgment upon his estate, and as such is entitled to be paid : it is also a lien on real estate, although five years have elapsed : but it must not be paid before the appeal be tried; and upon the distribution of the decedent's estate, a fund must be retained for that purpose.

APPEAL from the decree of the orphan's court of Cumberland county.

William Ramsey died seised of real estate in Cumberland county, and also in Perry county, and of personal estate; all of which was sold by the administrator : and the orphan's court appointed auditors to marshal and distribute the same among his creditors, whose debts were of all grades.

The first question that arose was, whether lien creditors were entitled to recover interest on their claims until the return of the sale of the real estate; or until the decree of payment was made.   The court below (Reed, president) determined that interest ceased at the return day of the order of sale and confirmation.

[Ramsey's Appeal.]

The commonwealth had a judgment, which was a lien on real estate ; but other creditors contended, because it was a debt due to the commonwealth, it must be last paid ; but the court decreed, that it should be paid according to its priority.

The decedent, in his lifetime, had been the executor of the estate of John Rhine, and as such, settled an administration account, by which there was a balance found to be in his hands of 8000 dollars. A transcript of this balance was filed in the common pleas, by the heirs, who claimed to give it the character of a judgment, to be paid as such out of the personal estate of the decedent. But the court decreed, that it had not the attributes of a judgment, and was only entitled to payment as a lien. The claimants also insisted upon their right to be substituted to the right of prior lien creditors, who took the fund arising from the sale of real estate : because they might have resorted to the personal estate, in their character of judgments ; and having two funds, they should have resorted to the one, which would have left the other undisturbed for this lien of a special character. But the court refused thus to substitute.

The real estate of Charles Paterson deceased, had been sold by his administrator, by an order of the orphan's court, for the payment of debts. William Ramsey became the purchaser, and entered into a recognizance in the orphan's court, to secure the purchase money. This was a part of the estate sold by the administrator of William Ramsey, the proceeds of which were claimed by the recognizee. This claim was opposed by the other creditors, on the ground that there was no law authorizing an administrator to take a recognizance in the orphan's court, to secure purchase money of land sold to pay debts ; and it was not, therefore, a lien. But the court decreed, that the lien was specific, and entitled to priority to the amount of that part of the fund in court.

A joint suit was brought against William Ramsey in his lifetime, and Sterrett Ramsey, which was referred to arbitrators, who awarded against both defendants the sum of 800 dollars. From this award, Sterrett Ramsey alone appealed, in 1824, for himself ; and in 1835, when this decree was made, that appeal was yet pending and undetermined. The plaintiff claimed to recover the amount of the award, as a lien on the real estate ; but the court was of opinion that the lien was gone, and decreed against the claimant.

The decree of the orphan's court, in each of these cases, was made the subject of the assignment of errors in this court, and the same were argued by

*Biddle,* for Rhine's heirs.
*Penrose* and *Alexander,* for Sterrett's administrator.
*Williamson,* for the commonwealth.
*Carothers,* for the recognizee.
*Watts,* for appellees generally.

The opinion of the Court was delivered by

ROGERS, J.—The questions presented to the court arise out of exceptions to the decree of the orphan's court of Cumberland county, liquidating and marshalling the assets of the estate of William Ramsey deceased, in the hands of John Harper, Esq., his administrator, to and amongst the creditors of the estate.

The first exception is, that the court erred in ordering interest on the judgment in favour of the commonwealth and against the decedent to be calculated only to the return day of the order, &c., viz. until the 5th of September 1832. A sale, under an order of the orphan's court for the payment of debts, is a judicial sale, and has been assimilated, in several cases, to a sale made by the sheriff, under process of a court of common law. Now, it cannot but be admitted, that interest ceases from the time of the return and confirmation of a sheriff's sale; and I see no reason, as a general principle, to make a distinction between a sale by the sheriff, and a sale by an administrator under the order of the court. The land is taken from the heirs to pay debts; and it is but reasonable, when the money is made by sale of the property, and in the hands of the officers of the law, that the debt should be considered as paid, to the amount of the money raised by the sale. There may be exceptions to this principle; but I see no circumstances, in this case, which take it out of the general rule. The court, it is alleged, were also in error in decreeing the payment of the judgment of The Commonwealth *v.* Ramsey; but this objection, if not abandoned, has been but feebly pressed. We are of opinion that the decree should be, in this respect, confirmed.

The following exceptions may be examined together.

That there is error in the decree and report of the auditors, in not allowing the legatees of John Rhine to be paid as a judgment; in refusing to subrogate the legatees of Rhine, having one fund, to the rights of the creditors by whom they are displaced as to that fund, such creditors having two funds; and in not decreeing the personal fund to be first applied to the payment of the debts of the deceased, according to the statute of distributions, and then applying the fund, raised by the sale of the real estate, to the payment of the liens upon it.

It appears, from the auditor's report, that the administrator had in his hands a balance amounting to the sum of 8134 dollars 13 cents: that this sum arose from the sale of real estate in the counties of Cumberland and Perry, some of which was incumbered by judgments, and some not; and also from the personal estate of the decedent. It has been decided, in the case of The Pennsylvania Agricultural and Manufacturers' Bank *v.* Stambaugh's Administrators, that when the land of an intestate is sold by execution, the money is to be distributed according to the order of the payment of debts in the case of personalty. As to the land, therefore, which was sold by the administrator, and on which there were no liens for purposes of distribution, it must be viewed as personal estate. What,

then, is the proper mode for the administrator to distribute this fund? It is the opinion of the court, that the personal fund, of course including the money arising from the sale of the land not bound by judgments obtained in the lifetime of the deceased, must be distributed, in the first place, among the creditors, in the order prescribed by the act of the 19th of April 1794. It is made the duty of an executor or administrator to pay all the debts of the intestate in the manner therein prescribed: viz. physic, funeral expenses, and servants' wages; second, rents not exceeding one year; third, judgments; and fourth, recognizances, &c. The personal property of a decedent is the primary fund for the payment of all debts; and this is as true of a judgment, which is a lien on the real estate in the lifetime of the decedent, as of any other debt. It is only in case there is an insufficiency of personal estate, that an orphan's court will order a sale of real estate to pay debts. I do not look upon this as a case of subrogation, or one in which the doctrine of marshalling assets comes into play; but as a case of the distribution of a fund under the plain directions of an act of assembly. The fund, therefore, which arises from the sale of the personal estate, &c., must, in the first place, be applied to the payment of the judgments which were obtained against William Ramsey, in his lifetime; and the fund which arises from the sale of the real estate must be paid to the judgment creditors, according to their respective priorities in point of time.

It has been contended, that Rhine's heirs are judgment creditors; and, as such, are entitled to an equal share of the personal estate: but we do not think that this claim has any of the attributes of a judgment. Previous to the act of the 1st of April 1823, balances which appeared to be, on settlement in the orphan's court, in the hands of an executor or administrator, were simple contracts only against the accountant, and entitled to no lien against the real estate. This was thought to be an evil; and the legislature sought to remedy this defect, by enacting that transcripts or extracts from the amount appearing to be due and in the hands of an executor or administrator on settlement in the orphan's court, and filed in the court of common pleas, shall be a lien on the real estate of such executor or administrator, from the time of the entry until payment, distribution or satisfaction. The act further provides, that the person interested may recover the amount due by action of debt or *scire facias*. The whole intent of the action, it seems to me, was to make the balance a lien, without intending to alter the character of the debt in any other respect. Although, then, we do not think that Rhine's heirs are entitled to a share of the personal estate as judgment, but simple contract creditors; yet, as lien creditors, they are entitled to the residue of the money accruing from the sale of the land affected by their liens.

It is alleged there was error in decreeing the payment of the recognizance of Matee *v.* Ramsey and Boden. The fund out of which

this money is decreed to be paid arises from the sale of the same land on which this recognizance is a lien.    That the recognizance taken by an orphan's court to secure the purchase money is a lien on the lands, is now too well settled to admit of question.    The very object of taking a recognizance is to secure a lien on the land.    It was the intention of both parties that it should be a lien.    This claim is allowed.

It remains now to examine the decision of the court on the judgment of Sterrett's Administrator *v.* William and Sterrett Ramsey. The situation of that claim is such, that we cannot now decide whether the plaintiff will ultimately be entitled to the money or not. The appeal of Sterrett Ramsey is still depending ; and, until this is disposed of, it is impossible to say whether any thing may be ultimately found due ; for, if Sterrett Ramsey succeeds on the appeal, it will be virtually a finding in favour of William Ramsey's estate. In that event, notwithstanding his judgment, he *may* recover *nothing* from the estate of William Ramsey.    But, unless he does succeed on the appeal, the award must be treated as a judgment against the estate.    I cannot agree with the court, that, as to the personal estate, this judgment is good.    He is suspended, it is true ; but after the appeal of Sterrett Ramsey is tried, if found against him, it is entitled to be paid as a judgment out of the real and personal estate. Notwithstanding five years have elapsed, yet as no *scire facias* could be issued, the lien of the judgment still remains.    Under these circumstances, the court must retain an amount sufficient to answer this claim ; subject to a final distribution after the trial of the appeal taken by Sterrett Ramsey.

Decree accordingly.