# Carver's Appeal.

Where real estate is sold by an assignee for the benefit of creditors, under the provisions of the Act of February 17th 1876, the interest on the liens does not cease until the day of the final confirmation of the sale by the court.

March 1st 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas of *Bucks county*: Of January Term 1879, No. 79.

Appeal of Elias Carver, executor and trustee under the will of Thomas Hayes, deceased, from the decree of the court confirming the report of the auditor to distribute the balance in the hands of the assignees of Gibson Johnson.

On April 2d 1877, Gibson Johnson made an assignment for the benefit of creditors. Under the provisions of the Act of 17th February 1876, Pamph. L. 4, enabling assignees for the benefit of creditors to make sale of the real estate of their assignor discharged of liens, his assignees appealed to the court and had an order made for the sale of the real estate. The order directed that the sale should be made for cash. The property was sold on 6th December 1877, for $3020 upon the following terms: "Ten per cent. of the purchase-money to be paid in cash, the balance on the first day of April next following." The report of the sale was presented to the court and confirmed *nisi* on December 14th 1877. The money was paid by the purchaser, and the deed for the property delivered March 30th 1878. There was nothing to show an absolute confirmation of the sale. The auditor calculated interest on the liens to March 30th 1878, the time the purchase-money was paid and the deed delivered. It was contended by the general creditors that it should only have been calculated to the return-day of the order of sale. The allowance of this interest to March 30th was excepted to, but the court overruled the exception and confirmed the report. Carver, one of the general creditors, then took this appeal.

*E. Carver, p. p.*, for appellant.—The sale being a judicial one,

the interest should not be calculated beyond the return-day of the order of sale, which in this case being fixed by the court, was the 10th of December, though the order was not returned until the 14th. A sale under the Act of Feb. 17th 1876, is analogous to that ordered by the Orphans' Court for the payment of debts; and it also resembles a sheriff's sale of real estate. It is well established law that the interest on liens upon land sold by the sheriff, ceases on the day of sale: Walton *v.* West, 4 Whart. 221; Bachdell's Appeal, 6 P. F. Smith 386. It is also well-settled law that when real estate is sold by order of the Orphans' Court for payment of debts, interest thereon ceases from the return-day of the order of sale: Ramsey's Appeal, 4 Wright 71.

The above authorities clearly show that the *confirmation* of a sale does not depend upon paying the purchase-money and delivering the deed. That act is the *consummation* of the sale.

No appearance nor paper-book, *contra*.

Mr. Justice MERCUR delivered the opinion of the court, May 5th 1879.

This is a case of distribution of the proceeds of real estate on a sale made by an assignee for the benefit of creditors. The single question presented is, when the interest on the liens shall cease?

In case of a sale by the sheriff on execution the rule is well-settled that the interest on all liens discharged by the sale, ceases on the day of sale. In the case of sales made in the Orphans' Court, a different rule has been recognised. Ramsey's Appeal, 4 Watts 71, was the case of a sale of real estate made by an administrator in pursuance of an order of court for the payment of debts. The question appears to have been whether the lien-creditors were entitled to interest on their claims until the distribution was made, or until the return of sale. The court below held that interest ceased " at the return-day of the order of sale and confirmation." That case was affirmed by this court. From the opinion of Mr. Justice ROGERS, it appears the confirmation was had on the return-day of the order of sale, and he manifestly assumed the purchase-money was paid on that day, and thenceforth was actually in the hands of the administrator. He says, as a general rule, he can see no reason to make a distinction between a sale by the sheriff and a sale by an administrator under an order of court. He further proceeds to say, " it is but reasonable when the money is made by sale of the property, and in the hands of the officers of the law, that the debt should be considered as paid to the amount of the money raised by the sale. There may be exceptions to this principle; but I see no circumstances in this case which take it out of the general rule."

In the case of a sheriff's sale, the law, and not the court, prescribes the terms of sale. It is for cash. It requires no confirmation by the court. A sale by an administrator, or by an assignee

[Carver's Appeal.]

for the benefit of creditors, is made by order of court and upon cause shown. The court prescribes whether the sale shall be for cash or on credit, and it is not complete until confirmed by the court. Hence it was held in Jacob's Appeal, 11 Harris 477, that a purchaser at administrator's sale who had paid no part of the purchase-money, had no equitable estate in the premises prior to confirmation. It could not therefore be bound by a judgment entered against him after it was struck down, but before confirmation. In this it is unlike the case of a purchase at sheriff's sale. A judgment against such a purchaser, obtained after the sale and before the acknowledgment of the deed, if the deed be afterwards acquired, attaches as a lien at the date of its recovery : Morrison v. Wurtz, 7 Watts 437 ; Slater's Appeal, 4 Casey 169.

A sale by the assignee is substantially subject to the same control of a court as one made by an administrator. The first section of the Act of 17th February 1876, Pamph. L. 4, authorizes the Court of Common Pleas on petition of the assignee of an insolvent, to order a sale of encumbered real estate, which sale "after being confirmed by said court, shall discharge all liens against the real estate so sold," excepting first-lien mortgages, ground-rents and purchase-money due the Commonwealth.

In the present case the order was to sell for cash. The sale was made on the 6th December 1877. The assignee, in fact, sold on different terms, to wit : "ten per cent. of the purchase-money to be paid in cash, the balance the first day of April next following." The sale was so returned to the court and confirmed *nisi* 14th December 1877. The money was paid by the purchaser and the deed delivered to him on the 30th March 1878. The confirmation of the sale as made was a ratification of its terms with like effect as if such had been the original order of the court: Jacobs's Appeal, *supra*.

The auditor appointed to distribute the fund reported that the record showed no confirmation absolute. All it did show was the *nisi* confirmation of 14th December. He therefore found the passing of the title to be tantamount to entry of final confirmation, and adopted that as the time when interest should cease. The court below dismissed all exceptions and confirmed the report.

It is thus shown that prior to the 30th March 1878, the purchaser was not, by the terms of his purchase, required to pay, and until that time the purchase-money which was to take the place of the land was not "in the hands of an officer of the law." Still further, the court which is the proper tribunal to determine when the sale was confirmed absolute, has decided that to be the time. Holding as we do, that the day of final confirmation of a sale made by an assignee, is the time for interest on the liens to cease, we see no error.

Decree affirmed, and appeal dismissed at the cost of the appellant.